Good morning, Your Honors. Ashwini Mate representing Louis Arthur Calvin. May it please the Court. I'd like to reserve two minutes of my time for rebuttal, if I may. Keep an eye out. We'll try to help you. Your Honors, Mr. Calvin's jury had the opportunity to convict him of acting in a cold, callous, and calculating manner. They did not. Instead, the sentencing court stepped in and sentenced him as if he had acted in a cold, callous, and calculating manner. This constitutional error was not harmless, either under Brecht or AEDPA. Well, that's really our issue, isn't it? Go ahead. What makes it a constitutional error? Under Cunningham, it's a violation of his Sixth Amendment right to a jury. To do what? To have been sentenced without a – by a judge and not a jury. Sentenced in aggravation by a judge and not a jury. Go ahead. We'll listen to you. And so under Brecht, this Court – this Court has thrice before – I mean, at least four times before, sorry – determined that a Cunningham error had a substantial and injurious effect on a petitioner's sentence where the upper term was based on subjective factors such as those that were applied here. Those cases are, you know, as I've cited in my briefs, Unruh v. Hall, Ramirez v. Vasquez, which is particularly on point here because the defendant in that case – case was also – his murder conviction was also mitigated to manslaughter or his murder charge. Counselor, what – what is the deference, if any, that we owe to the State court of appeals' review of the harmlessness concept? None, because at this point they misapply – they clearly misapply Chapman, the State court of appeals. As I briefed, there are several facts which the jury would not have been allowed to consider in its decision, and the court of appeals was required to determine whether or not a jury or this jury would have determined the same aggravating circumstances beyond a reasonable doubt. And because the California court of appeals considered facts that the jury would never have been allowed to consider in reaching that determination, if the aggravating circumstances were put to them, the California court of appeals clearly misapplied Chapman by making determinations that the jury would never have been allowed to determine. And making that reach that they clearly misapplied Chapman, that depends upon your found callousness, which seems to be sort of in a circle on the reasoning. Do we owe them deference in determining whether or not they erred on that? Well, and you tell us we don't because they erred. That doesn't get me very far, I don't think. Well, I believe that – well, in determining that the – that the crime was callous or great callousness, the California court of appeals considered a fact that the jury would never have been allowed to consider, namely that Mr. Calvin was in a car and that Mr. Shaw was outside of a car. That's – Why is that? Why would they not have been able to consider that? Under the California rules of court, the jury would not be allowed to consider those facts in determining the aggravating circumstances. There are certain facts when they're the elements of the crime or elements of an enhancement that a jury can't consider in determining aggravating circumstances. What's the clear line that demarcates being in or out of a car as being on the side they couldn't consider? Simply that it was an element of his crime. Shooting from a motor vehicle, one of the elements of the crime was that he was inside of a motor vehicle and the victim was outside of a motor vehicle, a fact that the jury would not have been allowed to consider and the California court of appeals did consider in determining callousness. Do you have a case that says that? In People v. Sandoval, when they – and in Cunningham itself, when they write about what – how juries determine the aggravating – sorry, how judges determine the aggravating rules of court define what judges are allowed to consider and what they're not allowed to consider. And some of them are – and they're – That's a remarkable proposition, counsel. I mean, you're talking about someone who was in a car, who had a firearm there, who, you know, reached in, unfolded it, cocked it, shot outside the window at this guy at point blank range. How can that not be an aggravating circumstance that would be considered by a jury were the jury to be the one to consider it? Because they considered it in determining the counts of his conviction. If they considered that fact in determining the counts of his conviction, they would not have been permitted to consider those facts. He could have been convicted for shooting from a motor vehicle if the person had been across a six-lane street, couldn't he? Sorry, say that again? He could have been convicted of the crime if the victim had been across a six-lane road, right? Yes. In fact, the victim was right next to the car. He shot at point blank range. Yes. So why couldn't they consider that? It's not an element of the offense. The exact proximity of the two – of the victim and the perpetrator is not an element of the offense. The proximity isn't an element of the offense, but the fact that he shot in a car while the victim was outside of the car was an element of the offense. And that was what the California Court of Appeal considered in determining callousness. In your view, is there any dispute of the facts in this case? There is no dispute as to the facts themselves, but there is – So everybody knows what happened. Yes. But there is a dispute as to the Petitioner's state of mind and, in turn, the subjective conclusions that the California Court of Appeal and the Sentencing Court reached. You mean there's a dispute now or there was a dispute there? There was a dispute then at trial. There was his – Because it couldn't be a dispute now. It's been resolved against him, hasn't it? Sorry, say that again? It's already been resolved. Yes. But since his state of mind was disputed, it's not certain that a jury, having been submitted these aggravating circumstances, would come to the same conclusion as the Sentencing Court did. It may have been resolved in terms of the counts of conviction that they reached, but not in terms of the sentence, necessarily. But what do you want us to do? Remand? Is it the same judge? Yeah. If the same judge is still there, yes. Do you think the change of mind because of anything you've said today? Well, I believe that – I don't know exactly what – how California has revamped their rules in terms of sentencing, but if the midterm is no longer – if the midterm is no longer the statutory max, I believe that they would have more discretion, yes. It's a possibility that he could be convicted for first-degree murder on these same facts, don't you think, on this record? The jury didn't convict him of first-degree murder. I know they didn't because he wasn't charged with it. But if you send it back and say, start over on the records in this case, on the facts in this case, the undisputed facts, couldn't he have been found guilty of first-degree murder? Yes, but this Court doesn't need to send it back for a – I'm not suggesting that we have to, but when we listen to your argument, I don't know how we can escape the facts of the case. Even though the facts might be undisputed, again, this jury at the very least, which he only committed voluntary manslaughter and not first-degree murder or murder. This jury – Well, he wasn't charged with first-degree murder. I was just asking you a hypothetical situation. Yes. I mean, hypothetically, of course, anything can happen, but I do believe that – No, not on the facts. I'm talking about hypothetically, based on the facts. Based on these facts, I think it's still possible that he would be returned to conviction of voluntary manslaughter. I think that the jury read the instructions carefully after they deadlocked. I mean, that means some of the jurors believe that he was actually innocent at the time that they reached a deadlock, and then they went back to the court – went back to the jury room and had to – No, wait, whoa, whoa, just back up just a second. Actually innocent? If the jury came back and indicated that they were deadlocked on the murder count and they couldn't reach a conviction, and the judge urged them to go back and think of the mitigating – sorry, the lesser-included offenses, that's when they reached a compromise verdict of voluntary manslaughter. Yeah, but actual innocence is a term of art that usually means he didn't do it. Correct. I'm sorry. So there's not any indication of actual innocence here? No. I mean, it seems pretty clear. The guy did the thing. The question is just how much criminality was in it. Yes, Your Honor. So your case really hangs on Chapman? Yes. And the fact that Chapman was misapplied in this case because the court considered facts that they weren't permitted to. So if you're wrong about Chapman, you lose. I still think that Brecht subsumes the analysis under Chapman, and that under Brecht, if this court is in virtual equipoises to the harmlessness of the error, i.e., if you agree that two people couldn't arrive at the same subjective conclusions at the same way, and if you're in virtual equipoises to the harmlessness of the error, then that's graved out. And graved out motions. Is that the standard? That's the Brecht standard, yes. And unless this court has further questions. OK. Is there any time for rebuttal or what? Yes. OK. Good morning, and may it please the court. David Glassman, further respondent. Judge Smith, to start with one of your questions. The case was about Chapman, but it isn't anymore. And to just briefly explain procedurally and chronologically what happened here. The jury initially was considering the murder charge, deadlocked on murder after two days of deliberations. So it is fair to say that the jury was taking a long look at whether this was a murder. Ultimately, that was not the jury's verdict. And as we know, a voluntary manslaughter verdict was reached. Having said that, it is also a fact that the sentencing court, in this case, not the jury, made the determination of the aggravating circumstances that Cunningham indicates, as a matter of constitutional law, the jury is to make. But it is also fair to say that when the state court applied the harmless error analysis that is required in these circumstances, it evaluated it under the Chapman standard, which, of course, is the most stringent standard. And it is not accurate to say that it did so, and this is stressed in the opening brief, I just want to reiterate our opposition to that. It is not accurate to say that those findings were made by the court based on subjective factors. As you all know, in sentencing a criminal defendant, a court can evaluate the aggravated circumstances. That's exactly what differentiates an aggravated term from the presumptive term, from the mitigated term. And aggravated circumstances in this case, notwithstanding the manslaughter verdict, included the fact that the defendant, the petitioner, was in the vehicle. He's in a 5,000 pound vehicle. There is an unarmed person on the other side of that vehicle. An unopposed, undisputed fact is that after killing him, or at least paralyzing him and leaving him to die, the petitioner immediately flees the scene. Driving away with a cell phone that is never used to summon any help for the dying or dead victim. And that when he is apprehended, he expresses concern that media is photographing him. So there are circumstances that are not indicative of panic, and are indicative of callousness. Now, whether or not this court acting as a sentencer would have imposed the same sentence, of course, is not the standard. The question for the state appellate court was whether or not this was Chapman harmless. And that court found that the aggravators that I've described and others were present beyond a reasonable doubt, such that a jury would have made the finding. So to turn to another point of disagreement, it isn't, I think- Just before you go on, Dan. Yes. So it's the state's position that Chapman was violated. It's just a question of the harmlessness analysis. I mean, Cunningham was violated, excuse me. But in applying Chapman, that the state court of appeal properly applied the harmlessness analysis, right? The state has acknowledged at all times, including in the direct appeal in state court, that Cunningham was violated and that the appropriate harmless error standard was Chapman. And in federal court, the state continued to take that position. And the district court found that in addition to finding that the analysis done by the state court was appropriate, applied the harmless error standard that applies in this court. And that is where, as I said at the beginning, we move past Chapman. So there has been no discussion by the petitioner of Davis versus Ayala. And Davis versus Ayala is the last indication by the Supreme Court as to how the harmless error evaluation is to work. And we know from the Davis case that the question is not, again, what this court would do in the first instance if sentencing this defendant or even in evaluating the jury sentence. The standard is whether or not any fair-minded judge looking at the manner in which the harmless error evaluation was made by the state court would find it unreasonable. And no one has come to that conclusion, at least not yet in this case. That is, the magistrate was of the view that the harmless error inquiry was adequately done by the state court, as was the district court. So this case- So from your perspective, applying Ayala, which I point out is the most recent iteration on this. Yes. Under EIPA, in effect. Correct. We do consider, we do defer to the state court, because no fair-minded jurist found that there was harmlessness, or that it was harmful here, right? It is extreme deference, according to Davis versus Ayala, which of course is in accordance with general principles underlying the ADPA that were also reflected in Brick. But at some point, these cases wouldn't continue to be decided if they didn't mean something, and Davis versus Ayala means that given the collateral nature of this review, a particular sort of deference is warranted. And that deference is certainly justified in this case. Thank you. What do you say to the proposition advanced by the petitioner that if facts to which shooting from a vehicle are inherent or elemental in the crime itself, then they cannot be aggravating factors? Well, several things, Judge Santel. First of all, and I think your questions touched on this. The fact of the matter is, there is no, in sentencing the defendant, it is the circumstances of the crime that are evaluated. And to raise a claim such as what I take at that claim is, which is essentially the defendant is being doubly punished for his crime. That would require, first of all, state courts decide what state law is and what does or doesn't violate a state statute. So for that claim to be appropriate here, first of all, I'm not sure it would be, because it's re-litigating state law that I don't think was ever litigated in this case. There was an argument in this case in state court that Cunningham was violated. Not that a jury couldn't have made those findings, but that a judge did it instead. So I don't think that state law was violated, and it wouldn't matter whether it was or not. Is there a clear state case on that question? Not one that comes immediately to mind, but again, that's not the claim here. I think if one goes back and looks, for example, at the district court opinion, there is no discussion of whether or not, again, under state law, and this court is not an arbiter of state law, under state law- No, that's why I asked you if there was a state case rather than- Yeah. So that's the best I can tell you. Thank you, counsel. So bottom line, not a state law case. Cunningham was violated, but we apply a YALA here. YALA. If there are no fair-minded jurists that would disagree with the way it was done in terms of the harmlessness analysis, end of story. End of story. Thank you. Thank you. Your Honor, the Supreme Court in Cunningham said itself that a fact that is an element of the crime cannot be used to impose the upper term. And so if the Supreme Court of the United States affirmed that a fact that is an element of a crime cannot be used to impose the upper term, and the California Court of Appeal, in their Chapman analysis, used facts that were the elements of the crime, clearly they misapplied Chapman. Well, aren't you basically assuming that there's no harmlessness analysis possible here? You're just saying they violated Cunningham, therefore it's over, you gotta reverse. No, that a harmlessness analysis is possible, but based on facts that could have properly been considered by the jury. So you don't read a YALA as saying, okay, you've got a Cunningham violation. Acknowledged, they acknowledge it, you claim it. Well, the question is, what do you do about it? YALA says that as long as no fair-minded jurist could disagree about it, and they find it harmless, that's the end of the story, isn't it? I believe it's if no fair-minded jurist could disagree with the reasonability of the state court's analysis. And in this case, again, the state court of appeals analysis was clearly unreasonable in that they considered facts that they weren't permitted to. And which fair-minded judge disagreed with that? In several cases that have come before this- I'm talking about in this case. In this case? I mean, it's here because- You're asking us to do that. Yes. Okay. But the reality is, that's the standard. If when we look at this, acknowledging that Cunningham was violated, if we look at this and conclude that the error was harmless, then that's acknowledging there's a Cunningham violation, but that's the end of it. I think it's if you conclude that the state court of appeals analysis was reasonable under Chapman. And again, I urge this court to understand that it was necessarily unreasonable under Chapman because they relied on facts that they could not. So basically you're saying that Cunningham was violated, and because Cunningham was violated, we keep going back to Cunningham. We're really not doing a harmlessness analysis. We're just going back to Cunningham. It is a harmlessness analysis in determining if they applied. Chapman is the case for harmlessness. And if they misapplied Chapman, i.e. they did the harmlessness analysis incorrectly or unreasonably, then this court should reverse. And I contend that they did the Chapman analysis clearly incorrectly. I think we have your argument. Okay. Thank you very much, counsel. Thank you both. The case just argued is submitted.
judges: Sentelle, Farris, M. Smith